# United States District Court
### for the
### Western District of New York

| | |
|---|---|
| **United States of America** | |
| v. | 25-mj- 83 |
| **LUIS MERCADO a/k/a Yvng Fabii** | |
| *Defendant* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### COUNT 1
### (Possession of a Machinegun)

On February 9, 2024, in the Western District of New York, the defendant, **LUIS MERCADO a/k/a Yvng Fabii**, did knowingly possess a machinegun, as defined in Title 26, United States Code, Section 5845(b), that is, one (1) Glock 19 Gen 5 9mm semi-automatic pistol, which had the manufacturer's serial number removed, obliterated and altered and was equipped with a machinegun conversion device used to modify a Glock-style semi-automatic firearm enabling it to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger, knowing and being aware of the essential characteristics of the firearm which made it a machinegun.

**All in violation of Title 18, United States Code, Sections 922(o)(1) and 924(a)(2).**

### COUNT 2
### (Possession of a Firearm with Removed, Altered and Obliterated Serial Number)

On February 9, 2024, in the Western District of New York, the defendant, **LUIS MERCADO a/k/a Yvng Fabii**, did knowingly possess a firearm, that is, one (1) Glock 19 Gen 5 9mm semi-automatic pistol, which had the manufacturer's serial number removed, obliterated and altered, and that had been shipped and transported in interstate commerce.

**All in violation of Title 18, United States Code, Sections 922(k) and 924(a)(1)(B).**

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

*Complainant's signature*
*Curtis R. Middlebrooks*

CURTIS R. MIDDLEBROOKS, SPECIAL
AGENT FEDERAL BUREAU OF
INVESTIGATION

*Printed name and title*

Criminal Complaint submitted electronically by e-mail in .pdf format. Oath administered, and contents and signatures attested to me as true and accurate telephonically pursuant to Fed R. Crim. P. 4.1.

Date: May 16, 2025

*Judge's signature*
*H. Kenneth Schroeder, Jr.*

City and State: Buffalo, New York

HONORABLE H. KENNETH SCHROEDER, JR.
UNITED STATES MAGISTRATE JUDGE

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

STATE OF NEW YORK      )
COUNTY OF ERIE         )    SS:
CITY OF BUFFALO        )

I, **CURTIS R. MIDDLEBROOKS**, Special Agent with Federal Bureau of Investigation, being duly sworn, deposes and says:

1.  I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code. I have been a Special Agent with the Federal Bureau of Investigation (FBI) since July of 2020. I have received basic drug, gang, criminal enterprise, and Title-III wiretaps investigative training at the FBI Training Academy located in Quantico, Virginia. I have served as an FBI Special Agent since July of 2020. Prior to my employment as a Special Agent with the FBI, I was employed as a United States Probation Officer (USPO) in the Western District of New York from July of 2009 through July of 2020.

2.  During my career, I have participated in investigations involving violent crime, firearms trafficking, drug trafficking networks, organized crime, and neighborhood-based street gangs. I have had the opportunity to work with several other FBI agents and other law enforcement agents and officers of varying experience levels, who have also investigated drug trafficking networks, with regard to the manner in which controlled substances are obtained,

diluted, packaged, distributed, sold and used within the framework of drug trafficking in the Western District of New York, the District of Massachusetts, and the Northern District of West Virginia. In addition, I have had the opportunity to work with several other FBI agents and other law enforcement agents and officers of varying experience levels, who have also investigated violent crime, firearms trafficking, drug trafficking networks, organized crime, and neighborhood-based street gangs in the Western District of New York, the District of Massachusetts, and the Northern District of West Virginia.

3. As a result of my training and experience, and as a result of the information shared by my experienced colleagues, I am familiar with how individuals and associates possess and utilize firearms in crimes of violence and in the violent defense of themselves and their associates in the context of their drug-trafficking and gang-related activity. My investigative experience detailed herein, and the experience of other law enforcement agents who are participating in this investigation, serve as the basis for the opinions and conclusions set forth herein. During my tenure with the USPO and FBI, I have executed State and Federal search warrants in narcotics and firearms-related investigations.

4. My current assignment requires extensive knowledge of matters related to illegal drug trafficking and violent gang activity in the Western District of New York. As part of my duties as a Special Agent, I investigate criminal activity related to drug offenses, in violation of Title 21, United States Code, Chapter 13, and firearms offenses, in violation of Title 18, United States Code, Chapter 44. My experience includes, but is not limited to, conducting surveillance, interviewing witnesses, conducting database checks, analyzing

telephone records, writing affidavits for search warrants and Title III wiretap investigations, executing search warrants, and working with undercover agents and informants. I am familiar with matters including, but not limited to, the means and methods used by drug trafficking organizations to purchase, transport, store, and distribute drugs, and the concealing of profits generated from those transactions. Through my training and experience, I have become familiar with the methods of operations typically utilized by individuals who distribute drugs. I know that it is common practice for drug traffickers to routinely utilize vehicles, rental vehicles, telephones, mobile phones, prepaid phones, calling cards, public telephones, text messaging, counter-surveillance, false or fictitious identities, and coded communications to communicate with their customers, suppliers, couriers, and other conspirators for the purpose of insulating themselves from the detection of law enforcement. Moreover, it is not unusual for them to initiate such mobile or prepaid phone service in the name of an associate or family member or in the name of a fictitious individual. The individuals often require the use of a telephone facility to negotiate times, places, schemes, and manners for importing, possessing, concealing, and distributing controlled substances, and for arranging the concealment of proceeds derived from the sale of controlled substances.

5. This affidavit is being submitted for a limited purpose, that is, a probable cause determination. Therefore, I have not presented all of the facts of this investigation to date. I have set forth only the information I believe to be necessary to establish probable cause. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from law enforcement officers and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this manner.

6.  I make this affidavit in support a criminal complaint charging **LUIS MERCADO** with violating Title 18, United States Code, Sections 922(k) (possession of a firearm with obliterated serial number); and 922(o) (possession of a machinegun) (together, the "Target Offenses").

## PROBABLE CAUSE

7.  Beginning in or around January of 2024, the FBI Buffalo Safe Streets Task Force (SSTF) and the New York State Police began investigating criminal activity on Buffalo's west side.  Through the investigation, **LUIS MERCADO** was identified as an individual engaging in criminal activity.

8.  Law enforcement investigation revealed that **MERCADO** and his associates have a demonstrated association with firearms.  For instance, a January 6, 2024 photo posted to the Instagram account for D.M., an individual known to law enforcement, which features **MERCADO** in the middle holding a large stack of currency, depicts an individual holding what appears to be a "mini-Draco" style firearm:



9. Your Affiant is aware that **MERCADO**, who is an aspiring rapper going by "Yvng Fabii," also frequently discusses Glock firearms, machinegun conversion devices, and violence in his publicly available music videos on YouTube:

- **May 17, 2022: Yvng Fabii & Dai Stackz x "Crime Scene" (Official Video Shot By Luqman)**

    o Video Time Stamp: 1:09 - "Glock with the switch cuz I'm sliden to kill"

    o Video Time Stamp: 1:41 – "Glock 27 extendo, got 22 shots"

- **August 7, 2022: Yvng Fabii - Paranoid (Official Music Video)**

    o Video Time Stamp: 1:43 – "push the button on the switch"[1]

- **December 23, 2022: Yvng Fabii - Cartier vs Rollie Feat. Jrey Cash (Official Music Video)**

    o Video Time Stamp: 0:58 – "I took a Glock and it come with a switch"

- **June 30, 2023: Yvng Fabii - GameTime (Official Music Video)**

    o Video Time Stamp: 1:06 – "I kill for my n****s, they'll kill for me…"

    o Video Time Stamp: 1:17 – "In my clip a .22, got a Glock…"

---

[1] In my training and experience, I know that "switch" is a slang term for a machinegun conversion device. Machinegun conversion devices, even without being installed on a firearm, qualify as "machineguns" under federal law because they are parts "designed and intended solely and exclusively … for use in converting a weapon into a machinegun." *See* 18 U.S.C. § 921(a)(24); 26 U.S.C. § 5845(b).

10. In my training and experience, **MERCADO's** use of the above lyrics, among others in his publicly available rap music videos, indicate a familiarity and knowledge with not only firearms, particularly Glock firearms, but also machinegun conversion devices, which are designed solely and exclusively for the purpose of converting a semi-automatic firearm into one capable of firing fully automatic.

11. On February 9, 2024, State University at New York (SUNY) Buffalo State Police officers responded to an altercation during a men's basketball game. While law enforcement was trying to identify the parties involved, **MERCADO** began to run away. When confronted by law enforcement, **MERCADO** stopped running, raised his arms, and stated, "I got the thing on me." When questioned as to what he (**MERCADO**) had, **MERCADO** stated, "I got the joint on me."[2]

12. Law enforcement conducted a pat down of **MERCADO** and found a loaded Glock 19 pistol with a suspected machine gun conversion device and extended magazine. The loaded firearm was found in **MERCADO**'s waistband. Law enforcement later learned that that the firearm had a defaced serial number. The defaced serial number was clearly visible on the side of the firearm. The firearm, shown below in four photos, was later identified as a Glock 19 Gen 5 9mm semi-automatic pistol with a defaced serial number:

---

[2] In my training and experience working gang, narcotics, and firearm cases, I know the terms "thing" and "joint" are slang that individuals often use to reference firearms.









13. On February 13, 2024, law enforcement submitted the Glock 19 seized from **MERCADO** to the Erie County Central Police Services Forensic Laboratory (the "CPS

8

Lab") for analysis. On March 14, 2024, the CPS Lab issued a Firearms Analysis Report, which test fired the Glock 19 and concluded that it was operable in both a semi-automatic and fully automatic mode. The CPS Lab also observed that the firearm was fitted with a select-fire switch installed on its slide. Finally, the CPS Lab concluded that the Glock 19's serial number was defaced.

14. Given the above observations, the Glock 19, seized from **MERCADO**, which was fitted with a machinegun conversion device, qualifies as a machinegun under federal law. Specifically, the Glock 19 is a machinegun as defined in 18 U.S.C. § 921(a)(24) because it is a "weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger." *See* 18 U.S.C. § 921(a)(24) (citing 26 U.S.C. § 5845(b)).

15. On May 6, 2025, Special Agent William Farnham, of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, reviewed the Glock 19 seized from **MERCADO**. Special Agent Farnham concluded that the firearm was manufactured outside of New York State, and thus traveled in interstate commerce prior to its possession by **MERCADO** in the Western District of New York.

## CONCLUSION

16. **WHEREFORE**, based upon the foregoing, I respectfully submit that there is probable cause to believe that **LUIS MERCADO** violated the Target Offenses, request that

the Court issue a Criminal Complaint and Arrest Warrant, and that this Complaint and Affidavit be sealed based on a continuing investigation until further order of this Court.

*Curtis R. Middlebrooks*
CURTIS R. MIDDLEBROOKS
Special Agent
Federal Bureau of Investigation

Affidavit submitted electronically by e-mail in
.pdf format. Oath administered, and contents
and signatures attested to me as true and accurate
telephonically pursuant to Fed R. Crim. P. 4.1 and
41(d)(3), 16th day of May, 2025.

*H. Kenneth Schroeder, Jr.*
HONORABLE H. KENNETH SCHROEDER, JR.
United States Magistrate Judge